UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO,
1625 L Street, N.W.
Washington, DC 20036-5687

    Movant,

v.

PROJECT VERITAS ACTION FUND,
1214 West Boston Post Road, No. 156
Mamaroneck, New York 10543

PROJECT VERITAS,
1214 West Boston Post Road, No. 156
Mamaroneck, New York 10543

JAMES O'KEEFE,
121 Goodwin Terrace
Westwood, New Jersey 07675-2938

-and

ALLISON MAASS,
19008 253rd Ave. N.W.
Big Lake, MN 55309-9795,

    Respondents.

Case: 1:21-mc-00133
Assigned To : Cooper, Christopher R.
Assign. Date : 10/25/2021
Description: Misc. (O-DECK)

Related Cases: 1:17-cv-01047 (PLF)

**NON-PARTY MOTION TO QUASH SUBPOENAS FOR TRIAL TESTIMONY OF
AFSCME PRSIDENT LEE SAUNDERS
AND CHIEF OF STAFF/COUNSEL WILLIAM LURYE**

1



**RECEIVED**

OCT 2 5 2021

Clerk, U.S. District and
Bankruptcy Courts

This Motion is jointly filed by Lee Saunders, the elected President of the American Federation of State, County and Municipal Employees ("AFSCME"), and William Lurye, the AFSCME Chief of Staff/Counsel, to quash subpoenas issued to them by Project Veritas Action Fund for trial testimony in the case of *Democracy Partners, et al. v. Project Veritas Action Fund, et al.*, No. 1:17-cv-01047, scheduled for trial before the Honorable Paul L. Friedman during the week of December 6, 2021.[1] *See* Subpoenas, Exs. 1 & 2. The subpoenas in this case are unduly burdensome, harassing, and in violation of the issuing party's obligations under the Federal Rules of Civil Procedure governing discovery. President Saunders and Chief of Staff/Counsel Lurye are high-ranking officials of a national labor organization composed of approximately 1.4 million members. President Saunders had extremely limited involvement with the facts of the pending case, has no unique knowledge of the material facts, and can offer no dispositive testimony on any of the material questions of fact. Chief of Staff/Counsel Lurye's testimony would be cumulative and derivative of another fact witness (former AFSCME Director of Government Affairs Scott Frey), who is better able to provide first-hand testimony and has already provided sworn testimony in this matter. *See* Transcript ("Tr."), Ex. 3. These subpoenas therefore appear calculated to impose a burden on, and harass, the elected President and a high-ranking official of a labor union to which Project Veritas is ideologically opposed. As such, and for the reasons set out below, AFSCME has good cause under Federal Rules of Civil Procedure 45, 37 and 26 to quash the subpoenas.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The contested subpoenas arise out of litigation challenging actions taken in 2016 by the Defendant, Project Veritas, to infiltrate the office of Plaintiff Democracy Partners, LLC., in order

---

[1] Undersigned counsel has conferred with Defendants' counsel under Local Rule 7(m), and Defendants oppose this Motion.

"to secretly record conversations and gain access to confidential information" about Democracy Partners' work surrounding the 2016 Presidential Election. *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 266-67 (D.D.C. 2020), reconsideration denied, No. CV 17-1047 (ESH), 2020 WL 5095484 (D.D.C. Aug. 27, 2020). Project Veritas published excerpts of the secret recordings in a four-part series on YouTube entitled "Rigging the Election." *Id.* Democracy Partners and other plaintiffs filed suit in this Court "claiming that Defendants had violated the federal and District of Columbia wiretap statutes and committed the common law torts of trespass, breach of fiduciary duty, fraudulent misrepresentation, and civil conspiracy." *Id.* Plaintiffs allege, in part, that Project Veritas' actions resulted in the loss of certain business arrangements between some of the Plaintiffs and AFSCME.

During the discovery period, Defendants served AFSCME with a subpoena for production of documents and for testimony. AFSCME duly produced the documents in its possession relating to the relevant topics, and designated its Director of Government Affairs, Scott Frey, to testify on its behalf pursuant to Federal Rule of Civil Procedure 30(b)(6). Neither President Saunders nor Chief of Staff/Counsel Lurye was noticed for deposition by either party. At deposition, Mr. Frey testified that he, together with Lurye, made the decision to cancel AFSCME's business arrangements with the relevant Plaintiffs. Mr. Frey explained the reason for that decision, the discussions leading up to it, and described his conversations with Plaintiff Creamer regarding the Project Veritas recording. Mr. Frey's testimony provided, in part, the basis for this Court's denial of Defendants' motion for summary judgment. *Democracy Partners v. Project Veritas Action Fund*, No. 17-cv-1047, 2020 WL 1536217, at *8 (D.D.C. Mar. 31, 2020). The Court also referenced Mr. Frey's deposition in its denial of Defendants' motion for reconsideration of that Order, holding that, given Mr. Frey's deposition, there existed a dispute

of fact for trial on the issue of whether Defendants' non-First Amendment activity was a substantial factor in bringing about the damages attributable to AFSCME's cancellation of contractual arrangements with certain of the Plaintiffs. *See* Memorandum Opinion and Order Denying Defs.' Mot. for Reconsideration (Dkt. 95).

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 requires the Court to quash or modify a subpoena when the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). In determining what constitutes an "undue burden," courts examine the specific facts of the case and "must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (internal quotation marks and citations omitted).

## ARGUMENT

### I. The Court Should Quash the Trial Subpoena Against President Saunders and Chief of Staff/Counsel Lurye Because Compliance Would Cause an Undue Burden Not Justified By the Value of the Proposed Testimony.

Lee Saunders is the elected President of AFSCME, the largest union of public service employees in the United States, representing approximately 1.4 million members across the country and with an expansive mission of fighting for quality public services, voting rights, retirement security, and health care for all. *See* https://afscme.org/priorities/issues. William Lurye is its Chief of Staff and Counsel. Pulling President Saunders and Chief of Staff/Counsel Lurye from their duties in order to testify in this case creates a burden for them, and for AFSCME. Moreover, as explained further below, given their tangential role in the facts giving rise to this litigation, the cumulative nature of their testimony with other witnesses, and the historical animosity of the Defendant which served the trial subpoenas towards AFSCME, it

appears that these subpoenas were intended precisely for the burden they would place on AFSCME, rather than for any need occasioned by the litigation.

Courts have long recognized that subpoenas of high-level officials for deposition or trial testimony should be scrutinized, both because high-profile individuals may be seen as targets to exert pressure unrelated to the factual disputes in the litigation, and because such individuals generally fill unique roles within their organization, and therefore pulling them from their ordinary course of duties is likely to impose a burden on the organization which they lead. As a result, many courts apply what is known as the "apex doctrine," under which "courts may protect [the] executives from [testimony under subpoena] when any of four circumstances exist: (1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for [testimony] would impose a hardship in light of the officer's other duties." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) (internal quotation marks and citation omitted); *see also Murillo v. Kohl's Corp.*, No. 16-CV-196, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016). This "apex doctrine" is "not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Little*, 2020 WL 868528, at *1 (internal quotation marks and citation omitted).

This Court has regularly applied the apex doctrine to subpoenas seeking to compel testimony by government officials, but has not yet had occasion to apply the doctrine to non-governmental officials. *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3-5 (D.D.C. Sept. 4, 2015). However, without regard to whether this Court adopts the apex doctrine as articulated by other federal courts, under Rule 45, it must

weigh the burden of the sought-for testimony against the interest served by compelling the testimony.

Here, there is no significant interest in compelling the testimony of these witnesses, as they have little to offer in the way of factual testimony. Indeed, the fact that Defendants failed to identify them on their Rule 26(a) disclosures, and failed to notice them for deposition during the extensive discovery of this case confirms that their testimony is not essential to any material fact. A witness that was neither deposed during a lengthy period of civil discovery, nor disclosed on the party's mandated disclosures, can hardly be central to the party's case. These witnesses have no first-hand knowledge about the infiltration and secret recording that forms the basis for the claimed liability. They appear to be called solely to testify regarding the damages allegedly suffered by some of the Plaintiffs relating to the termination of certain arrangements with AFSCME after the video was released. But President Saunders was not the decision-maker there, and Chief of Staff/Counsel Lurye's testimony would only be cumulative to that already offered by Mr. Frey, who was then the Director of Government Relations for AFSCME and bore responsibility for the decisions regarding those arrangements. More specifically:

**1. Frey testified based on his personal knowledge of the relevant facts in dispute and is best-situated to offer this testimony.** Frey was designed by AFSCME as their 30(b)(6) witness, but had personal knowledge of the facts in dispute and provided this testimony in his deposition. Frey testified that "it was under my authority as director of government relations to recommend a change" in the contract with Creamer's group "if I felt that was necessary." Tr. 14:1-14. It was Frey who Creamer called with the news that the video was about to be released, or had just been released, and it was Frey who Creamer called to follow-up in "several" calls to "plead his case" after the video was released. *Id.* at 54:9-20; 57:22-58:3; 60:11-17; 62:19-63:4;

80:3-12. It was also Frey who called Brad Woodhouse at Americans United for Change ("AUFC") after the release of the video to ask Woodhouse for "an explanation" as to "how did this happen." *Id.* at 66:13-20. As for the contract termination decision, when asked "whose decision was it to terminate the contract and relationship with Bob Creamer's Strategic Consulting Group and Democracy Partners," Mr. Frey testified that he "went up to discuss this, as I said, with the chief of staff . . . and we just mutually agreed that we should end the relationship." *Id.* at 75. Frey further testified that the decision to terminate support for AUFC was made at the same time as the decision to terminate the relationship with the Plaintiff entities, and that it was he who communicated that decision to Woodhouse at AUFC. *Id.* at 91:22-92:1; 101:9-13.

2. **President Saunders has no independent knowledge of any disputed facts.**
Frey's testimony made clear that President Saunders had no substantive role in any of the conversations with Creamer about the video, or in the decision to end the relationship with Plaintiffs. Frey testified that he and the Chief of Staff made the mutual agreement to "end the relationship" with Plaintiffs – that decision formally was a "recommendation to the president," but they felt sure he would not disagree with their recommendation. Tr. 75:1-14. Subsequent to that decision, a day or two after the video's release, Frey testified that he had a "pretty short conversation" with the President in which the President expressed concern that Brad Woodhouse from AUFC had not called him directly about the video. *Id.* at 73:19-74:20; 75:15-76:4. But Mr. Frey testified, "I don't recall that [President Saunders] mentioned termination of the relationship" with Plaintiffs. *Id.* at 76. That was the extent of President Saunders's involvement here, and therefore it is plain that any non-hearsay testimony he could offer would be minimal and cumulative to the testimony already offered by Frey. Not only does he have no "unique"

7

personal knowledge of the facts in dispute, but in fact it appears he has no first-hand personal knowledge at all.

3. **Lurye's Testimony Would Be Cumulative and Can Be Garnered from Other Witnesses.** While Chief of Staff/Counsel Lurye did participate in the decision to sever the relationship with Plaintiffs, as Frey testified, that decision was arrived at mutually, during a conversation between the two men. Frey has already testified about this discussion and decision, and therefore Lurye has no unique or additional facts to add. Moreover, because it was Frey who had "several" telephone conversations with Creamer regarding the video, any testimony that Lurye might offer regarding those calls would be inadmissible hearsay.

Therefore, as shown above, Defendants' interest in the testimony of either President Saunders or Chief of Staff/Counsel Lurye is—at best—minimal. The fact that Defendants never sought to depose them during the fifteen months of discovery demonstrates that they have no real questions to ask them. In contrast, a jury trial subpoena (which necessarily involves time to prepare for testimony and being available for an uncertain date or time during the course of the trial) is a burden on these two individuals who will have to defer other time-pressing matters for AFSCME in order to prepare and appear.

Defendants' trial subpoenas should be viewed with particular scrutiny here, because part of Defendants' mission involves opposition to, and covert infiltration of, labor unions—in particular public employee unions such as AFSCME.[2] Allowing Defendants' counsel to

---

[2] *See, e.g.*, *AFT Michigan v. Project Veritas*, 378 F. Supp. 3d 614, 617 (E.D. Mich. 2019) (denying Project Veritas's motion to dismiss complaint by AFT Michigan alleging Project Veritas "implanted" an individual to "covertly record its staff members' conversations, distort and manipulate them, then release them to the public for the purpose of disparaging AFT."); Mark Mazzetti & Adam Goldman, *Erik Prince Recruits Ex-Spies to Help Infiltrate Liberal Groups*, N.Y. TIMES (Mar. 9, 2020), https://www.nytimes.com/2020/03/07/us/politics/erik-prince-project-veritas.html (explaining how Project Veritas ran an organization to "copy files and

8

question AFSCME's elected President and Chief of Staff/Counsel under oath despite their minimal knowledge of the facts, particularly where Defendants did not even bother to notice these purported witnesses for deposition, suggests that the subpoenas may be motivated by Defendants' extrinsic goals, rather than the defense in this litigation. Compelling this testimony risks allowing Defendants to try to use this Court as a platform to advance their ideological goals, rather than as a forum to resolve the claims brought by Plaintiffs.

Ultimately, the interests served by compelling the trial testimony of President Saunders and Chief of Staff/Counsel Lurye are far outweighed by the risk of harassment to AFSCME and its officials, and the burden imposed by the need to prepare for, and maintain availability for, trial testimony.

II.   **The Court Should Quash the Trial Subpoena Against President Saunders and Chief of Staff/Counsel Lurye Because Defendants Failed to Timely Disclose Them as Witnesses.**

Alternatively, this Court may also quash both the Saunders and Lurye Subpoenas because neither individual was named on Defendants' Rule 26(a)(1) disclosures or deposed during discovery. AFSCME's third-party document production was made on June 8, 2018, and its institutional deposition designee was deposed on November 27, 2018. 6/8/2018 Cover Email with AFSCME Production, Ex. 4; Tr. Taken together, the document production and deposition gave Defendants all the facts they would need to determine necessary witnesses on any material disputed issues related to AFSCME. Yet Defendants neither issued deposition notices for President Saunders and Chief of Staff/Counsel Lurye, nor did they update their Rule 26(a) initial

---

record conversations in a Michigan office of the American Federation of Teachers"); *Project Veritas Exposes Union's Political Corruption*, PR NEWS WIRE (Sept. 27, 2012), https://www.prnewswire.com/news-releases/project-veritas-exposes-unions-political-corruption-171589561.html (press release from Defendants extolling attempted infiltration of a different public employee labor union).

disclosures (as required under Rule 26(e)) to indicate that President Saunders and Chief of Staff/Counsel Lurye were individuals that Defendants might "use to support its claims or defenses." *See* Defendants' Initial Disclosures, Ex. 5.

Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that ... witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." This Court has applied Rule 37(c) to prevent a party from calling a witness at trial where the witness was not previously disclosed. *See Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008); *see also Brooks v. Kerry*, 37 F. Supp. 3d 187, 206-07 (D.D.C. 2014) (holding that the disclosure of a witness was untimely when "court ordered discovery ha[d] already closed" and sanctioning exclusion of the witness). Exclusion is "automatic and mandatory" unless the party seeking to rely on the witness can "prove that its violation was either substantially justified or harmless." *Elion*, 544 F. Supp. 2d at 6 (internal quotations omitted). The "motive or reason for the failure is irrelevant." *Id.* at 5. In *Elion*, the Defendant did not disclose a potential witness until the Pretrial Statement was filed, and the Court accordingly concluded that her testimony "must be excluded under Rule 37." *Id.* Here, there appears to be no justification for Defendants' failure to disclose President Saunders or Chief of Staff/Counsel Lurye, and serving them with a surprise trial subpoena for testimony in open court for a matter that transpired five years ago and with which they had only minimal involvement is not harmless to the individuals subpoenaed.

## CONCLUSION

Wherefore, for the foregoing reasons, President Saunders and Chief of Staff/Counsel Lurye respectfully request this Court quash the subpoenas served on them.

## ORAL HEARING REQUESTED

Pursuant to LCvR 78.1, AFSCME requests an oral hearing on this Motion.

Dated: October 25, 2021                                     Respectfully submitted,

*/s/ Kathleen Keller*
Kathleen Keller (D.C. Bar No. 470505)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, D.C. 20005
(202) 842-2600
kkeller@bredhoff.com

*Counsel for Movant AFSCME*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, a copy of the foregoing Non-Party American Federation of State, County and Municipal Employees ("AFSCME")' Motion to Quash Rule 45 Subpoenas was served via First-Class mail and email upon all counsel of record, including the following:

Paul A. Calli
Charles P. Short
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
Telephone: (786) 504-0911
Fax: (786) 504-0912
PCalli@calli-law.com
CShort@calli-law.com

Stephen R. Klein
BARR & KLEIN PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 804-6676
steve@barrklein.com

Michael J. Madigan
LAW OFFICES OF MIKE MADIGAN PLLC
3910 Hillandale Court NW
Washington, DC 20007
Telephone: (202) 255-2055
Mjm20@mac.com

Aderson Bellegarde Francois
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, NW
Suite 352
Washington, DC 20001
aderson.francois@georgetown.edu

Stephen R. Klein
Law Office of Stephen R. Klein
500 Madison Street #419
Alexandria, VA 22314
Stephen.klein.eq@gmail.com

Kerry Brainard Verdi, Esq.
Benjamin R. Ogletree
VERDI & OGLETREE PLLC
1325 G Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 449-7703
Facsimile: (202) 449-7701
Kverdi@verdiogletree.com

Benjamin Barr
BARR & KLEIN PLLC
444 N. Michigan Avenue, Suite 1200
Chicago, IL 60611
Telephone (202) 595-4671
ben@barrklein.com

Daniel D. Mauler
Redmon, Peyton & Braswell, LLP
510 King Street, Suite 301
Alexandria, VA 22314
DMAULER@RPB-LAW.COM

Joseph E. Sandler
Christina Bustos
Dara Lindenbaum
Mark Anthony Lancaster
SANDLER, REIFF, LAMB ROSENSTEIN & BIRKENSTOCK
1090 Vermont Avenue, NW, Suite 750
Washington, DC 20005
sandler@sandlerreiff.com

/s/ Kathleen Keller
Kathleen Keller
Counsel for Movant AFSCME